EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| PV Properties, Inc.<br><br>Recurrido<br><br>v.<br><br>Central Produce El Jibarito, Inc.; Orlando MAyendía Díaz Nell Blanco Casasnovas; Agro Produce Puerto Rico, Inc. Puerto Rico Supplies Group, Inc.<br><br>Peticionarios | Certiorari<br><br>2018 TSPR 9<br><br>199 ____ |

Número del Caso: CC-2016-1156


Fecha: 24 de enero de 2018


Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel I


Abogados de la Parte Peticionaria:

    Lcdo. Edgardo Colón Arrás
    Lcdo. Gabriel Quintero O´Neill


Abogados de la Parte Recurrida:

    Lcdo. Fernando E. Agrait
    Lcda. Norma Berrios Silva


Materia: Sentencia del Tribunal con Opinión de Conformidad
        y Opinión Disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| PV Properties, Inc.<br><br>Recurrido<br><br>v.<br><br>Central Produce El Jibarito, Inc.; Orlando Mayendía Díaz Nell Blanco Casasnovas; Agro Produce Puerto Rico, Inc., Puerto Rico Supplies Group, Inc.<br><br>Peticionarios | **Núm.** CC-2016-1156 |

SENTENCIA

San Juan, Puerto Rico, a 24 de enero de 2018

El recurso de *certiorari* que nos ocupa fue presentado por Puerto Rico Supplies y Agro Produce (en conjunto, los peticionarios) el 7 de diciembre de 2016. En síntesis, los peticionarios arguyeron que erró el Tribunal de Apelaciones al revocar el dictamen del foro primario que denegó la solicitud de PV Properties, Inc. (PV Properties o recurrida) para sustituir a su perito.

Según los peticionarios, tal revocación se sustentó en una evaluación errada de los hechos procesales y materiales del caso, pues el foro apelativo intermedio no aplicó el análisis correspondiente para la revisión de determinaciones discrecionales emitidas por un Tribunal de Primera Instancia. Además, según lo argüido por los peticionarios, el Tribunal de Apelaciones no consideró la existencia de justa causa para la sustitución del perito ni la temporalidad

de la solicitud, pues ésta se realizó una vez finalizado el descubrimiento de prueba. De esta forma, puntualizan los peticionarios que el foro apelativo intermedio concluyó erradamente que era permisible la sustitución del perito ya que no se había celebrado la conferencia con antelación al juicio.

Así las cosas, el 31 de marzo de 2017, este Tribunal ordenó a la parte recurrida que, en un término de quince (15) días, mostrara causa por la cual no debía expedir el auto y revocar el dictamen del Tribunal de Apelaciones. En respuesta a ello, PV Properties compareció el 18 de abril de 2017 mediante *Oposición a Certiorari en cumplimiento de orden*. En ésta, PV Properties argumentó que era indispensable la utilización de un contador público autorizado como perito puesto que la tecnicidad del pleito y la voluminosa prueba así lo requerían. Asimismo, PV Properties señaló que el periodo de descubrimiento de prueba no había concluido.

Tras evaluar los argumentos de las partes, el expediente y el Derecho aplicable, se expide el auto y concluimos que en el presente caso no se configuró ninguna de las causales por las que un foro apelativo pudiera modificar una determinación discrecional de un juez de instancia. Por lo tanto, se dicta sentencia y se revoca la determinación del Tribunal de Apelaciones y se reinstala el dictamen del Tribunal de Primera Instancia mediante el cual

se denegó la sustitución del perito solicitado por PV Properties.

Así lo pronunció el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de conformidad a la cual se unen el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez. La Jueza Asociada señora Pabón Charneco emitió una Opinión Disidente a la cual se une el Juez Asociado señor Rivera García. El Juez Asociado señor Estrella Martínez disiente sin opinión escrita.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| PV Properties, Inc.<br><br>Recurrido<br><br>v.<br><br>Central Produce El Jibarito, Inc.; Orlando Mayendía Díaz Nell Blanco Casasnovas; Agro Produce Puerto Rico, Inc., Puerto Rico Supplies Group, Inc.<br><br>Peticionarios | **Núm.** CC-2016-1156 | |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se unen el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez

San Juan, Puerto Rico, a 24 de enero de 2018

En esta ocasión, nos corresponde determinar si un juez de instancia abusó de su discreción al denegar la sustitución de un perito. Por los fundamentos que esbozo a continuación, considero que el Tribunal de Apelaciones erró al revocar una determinación discrecional de instancia sin aplicar el debido análisis dispuesto para ello. Por lo tanto, estoy conforme con la Sentencia que hoy emite este Tribunal. Sin embargo, procedo a hacer unas expresiones adicionales referentes a la presente controversia toda vez que estimo que su dilucidación ameritaba una Opinión por parte de este Foro.

I

PV Properties, Inc. (PV Properties) suscribió un contrato de arrendamiento de un sistema de producción solar con la Central Produce El Jibarito (El Jibarito) el 29 de

febrero de 2012. Pasado varios meses, El Jibarito transfirió sus activos a Agro Produce Puerto Rico, Inc. (Agro Produce). Según las alegaciones de PV Properties, la mencionada transferencia provocó la insolvencia de El Jibarito, el impago de $19,689.04 por cánones de arrendamiento y se produjo la desconexión de los paneles fotovoltaicos antes del tiempo estipulado.

En vista de ello, PV Properties instó, el 24 de septiembre de 2013, una demanda en cobro de dinero, incumplimiento contractual, acción rescisoria, fraude de acreedores e *injunction* en contra de El Jibarito y Agro Produce. Ahora bien, en lo pertinente al tracto procesal, el descubrimiento de prueba inició el 17 de diciembre de 2013 con la presentación del *Informe para el manejo del caso*. En el referido informe, las partes señalaron los días 13, 14, 17 y 18 de marzo de 2014 como fechas disponibles para la celebración de la *Conferencia inicial* o la *Conferencia con antelación al juicio* (Conferencia).[1] Posteriormente, el 6 de febrero de 2014, el Tribunal de Primera Instancia dispuso que el descubrimiento de prueba se extendería hasta el 30 de abril de 2014.

Con el fin de auscultar si PV Properties había consultado a un perito, Agro Produce le envió un interrogatorio el 13 de febrero de 2014. Por su parte, PV

---

[1] Véase *Informe para el manejo del caso, Parte H. Fechas disponibles*, Apéndice, en la pág. 66.

Properties contestó que hasta ese momento no había realizado consulta pericial alguna.

Así las cosas, el 22 de septiembre de 2014 se celebró una *Conferencia con antelación al juicio* (Conferencia). Sin embargo, dado a que las partes no confeccionaron el correspondiente *Informe preliminar entre abogados,* el Tribunal dejó sin efecto la referida *Conferencia* y la reseñaló para el 18 de diciembre de 2014. No obstante, la *Conferencia* tuvo que ser pospuesta nuevamente por lo que, finalmente, fue reseñalada para el 17 de marzo de 2015.

Por otra parte, el 11 de marzo de 2015 —seis (6) días antes de la celebración de la *Conferencia con antelación al juicio*— PV Properties informó que referiría cierta evidencia a un perito por lo que necesitaría más tiempo para prepararse y deponerlo.[2] Además, PV Properties enfatizó que por la naturaleza técnica del pleito y la prueba voluminosa era indispensable la utilización de un perito.[3]

Cabe destacar que ambas partes incumplieron nuevamente con la orden para presentar el *Informe de Conferencia*

---

[2] Para esta misma fecha, ambas partes comparecieron ante el Tribunal de Primera Instancia solicitando la conversión de la *Conferencia con antelación al juicio* a una *Conferencia sobre el estado de los procedimientos*, puesto que referiría a un perito para la evaluación de cierta prueba documental. Véase *Urgente moción informativa conjunta y solicitando conversión de señalamiento,* Apéndice, en las págs. 177-78. Sin embargo, tal solicitud fue denegada por el Tribunal. Véase *Minuta de 17 de marzo de 2015*, Apéndice en la pág. 179.

[3] PV Properties puntualizó que el descubrimiento de prueba fue extenso y requirió más tiempo del usual. Asimismo, indicó que logró deponer a siete (7) testigos, entre ellos, cuatro (4) contadores públicos autorizados. Véase *Oposición a Certiorari en cumplimiento de orden*, en las págs. 4-5.

*preliminar entre abogados.* Ante tal incumplimiento, durante la celebración de la *Conferencia con antelación al juicio* del 17 de marzo de 2015, el foro primario ordenó a ambas partes presentar el referido *Informe preliminar* en un término de diez (10) días so pena de imponérsele una sanción económica de $100.00 a cada abogado. Además, el foro primario indicó que el descubrimiento de prueba concluiría el 30 de abril de 2015 y pautó para el 26 de mayo de 2015 la celebración de la continuación de la *Conferencia con antelación al juicio.*

Conforme a lo ordenado por el tribunal, el 27 de marzo de 2015, las partes presentaron el *Informe de conferencia preliminar entre abogados* en el cual PV Properties informó que estaba en proceso de contratar a un perito que sería notificado con suficiente antelación. Sin embargo, no fue hasta el 20 de mayo de 2015 —fecha en la cual se enmendó el *Informe de Conferencia preliminar entre abogados*— que PV Properties anunció como perito contratado al contador público autorizado, el Sr. Rafael Martínez Margarida. Por su parte, Agro Produce se opuso a que el foro primario permitiera a PV Properties anunciar un perito en ese momento, pues consideró que el pleito se encontraba en una etapa avanzada.

En cumplimiento con los señalamientos del Tribunal, el 26 de mayo de 2015, se celebró la continuación de la *Conferencia con antelación al juicio*, vista en que se le concedió a PV Properties su solicitud para utilizar al señor

Martínez Margarida como perito testigo. Además, la juez de instancia pautó la celebración de una *vista transaccional* para el 6 de octubre de 2015, fecha en la cual el señor Martínez Margarida tendría que rendir su informe pericial.

No obstante, el 6 de octubre de 2015, PV Properties informó al Tribunal de Primera Instancia que no tenía el informe pericial y que deseaba sustituir al señor Martínez Margarida como perito testigo.[4] PV Properties sólo arguyó que había identificado a un nuevo perito, pero éste aún no había sido contratado ya que tal decisión quedaba a la discreción de su cliente. Sin embargo, añadió que el nuevo perito identificado, presuntamente, había examinado la prueba.

Luego de evaluar los argumentos para la sustitución del perito, la juez rechazó en corte abierta tal solicitud y proveyó *con lugar* la petición del demandado para dar por concluido el descubrimiento de prueba. Consecuentemente, el foro de instancia señaló la continuación de la *Conferencia con antelación al juicio* para el 1 de diciembre de 2015. Ante esto, el 8 de octubre de 2015, PV Properties presentó una *Solicitud de Reconsideración*, mas ésta fue denegada por el foro primario mediante una *Resolución* notificada el 28 de octubre de 2015.

Por estar inconforme, PV Properties presentó ante el Tribunal de Apelaciones un recurso de *certiorari* el 23 de

---

[4] Surge de la *Minuta* de 6 de octubre de 2016 que la vista se atendió como una de estado de los procedimientos y no como una vista transaccional. Véase *Apéndice*, en la pág. 237.

noviembre de 2015. El foro apelativo intermedio notificó una *Sentencia* mediante la cual revocó la *Resolución* recurrida y ordenó que se permitiera la sustitución del perito. Este dictamen se fundamentó en un análisis de balance de intereses "entre la importancia de garantizar la economía de los procesos y la oportunidad que deben tener todas las partes de llevar a cabo un descubrimiento y [sic] efectivo".[5] Véase *Sentencia del Tribunal de Apelaciones*, KLCE201501813, en las págs. 11-12.

En respuesta a tal determinación, PR Supplies y Agro Produce (en conjunto, los peticionarios) acudieron ante este Tribunal el 7 de diciembre de 2016 mediante el presente recurso de *certiorari*. Los peticionarios arguyeron que erró el Tribunal de Apelaciones al revocar la determinación del foro primario sin evaluar la existencia de justa causa para permitir la sustitución del perito y al no emplear el análisis correspondiente para la revisión de una determinación discrecional de instancia. Además, señalaron que de igual forma erró el foro apelativo intermedio al concluir que era permisible la sustitución del perito ya que no se había celebrado la *Conferencia con antelación al juicio*.

El 31 de marzo de 2017 ordenamos a la parte recurrida mostrar causa en un término de quince (15) días por la cual

---

[5] Cabe señalar que el Tribunal de Apelaciones nada dispuso respecto al estándar de revisión y la deferencia reconocida a las determinaciones discrecionales de los jueces de instancia.

este Tribunal no debía expedir el auto solicitado y revocar el dictamen del Tribunal de Apelaciones. El 18 de abril de 2017 compareció PV Properties mediante *Oposición a Certiorari en cumplimiento de orden*. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A**

La Regla 23 de Procedimiento Civil regula lo concerniente al alcance del descubrimiento de prueba, el cual se ha reiterado que debe ser uno amplio y liberal. Véase 32 LPRA Ap. V, R. 23; *Rivera y otros v. Banco Popular de Puerto Rico*, 152 DPR 140, 152 (2000); *Ortiz v. ELA*, 125 DPR 65 (1989); *Rivera Alejandro v. Algarín*, 112 DPR 830 (1982). Asimismo, en aras de "fomentar una mayor flexibilidad y cooperación entre las partes", esta etapa del litigio se realiza de forma extrajudicial para así facilitar que las partes precisen cuáles son los hechos en controversia. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. III, págs. 835, 848.

Sin embargo, esta liberalidad no debe interpretarse como una absoluta ya que las Reglas de Procedimiento Civil establecen como principio rector la solución justa, rápida y económica de las disputas. Véase 32 LPRA Ap. V, R. 1. De esta manera, al sopesar ambos intereses contenidos en este cuerpo normativo procesal, se insta a toda persona que pretenda emplear algún método de descubrimiento de prueba a hacerlo de forma diligente. Además, somos del criterio que

"la justicia no es un juego, ni un deporte, sino una empresa formal a ser conducida seriamente". Cuevas Segarra, *supra*, en la pág. 836. Véase, además, *U.S. v. Procter & Gamble*, 365 US 677, 638 (1958). Por tanto, nuestro ordenamiento jurídico procesal ha establecido ciertas salvaguardas con miras a que las partes sean diligentes y evitar que el descubrimiento de prueba se convierta en un fin por sí mismo.

Conforme a ello, la Regla 23.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.2, reconoce al Tribunal ciertas facultades para emitir órdenes protectoras que limiten o condicionen el descubrimiento de prueba. Además, nuestras normas procesales promueven el que las partes planifiquen y diseñen el manejo del tiempo para así garantizar la eficiencia del descubrimiento de prueba. A esos efectos, la Regla 37.2 dispone que la *Conferencia inicial* —la cual puede ser sustituida por la *Conferencia con antelación a juicio* a discreción del juez— deberá celebrarse sesenta (60) días después de presentado el *Informe para el manejo del caso*. A tenor con ello, este *Informe* exige que se divulguen, al menos, tres (3) fechas hábiles de las partes para la celebración de la vista antes mencionada. De igual forma, diversos articulados de estas Reglas manifiestan en su lenguaje la discreción delegada a los jueces para intervenir en diversas etapas del litigio.[6] A manera de ejemplo, y en lo pertinente a los hechos del presente caso, hemos

---

[6] Véase, por ejemplo, la Regla 23.1 y la Regla 23.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1 y 23.4.

reconocido que los tribunales de instancia están facultados para modificar los términos y concluir el descubrimiento de prueba conforme a las particularidades y circunstancias de cada caso. *Rivera y otros v. Banco Popular*, 152 DPR, en la pág. 154; *Lluch v. España Service Sta.*, 117 DPR 729, 742 (1986).

A su vez, señalamos que en las controversias previamente dirimidas sobre este particular, hemos reconocido que "los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento". *Rivera y otros v. Banco Popular*, 152 DPR, en la pág. 154. De igual forma, el *Código de ética judicial* impone a los jueces el deber de intervención en los procedimientos para lograr así la pronta dilucidación de los pleitos. Específicamente, el Canon 11 del mencionado Código establece que: "[l]as juezas o los jueces son partícipes en la búsqueda de la verdad y la determinación de lo que es justo. A esos fines, deberán intervenir durante el curso de cualquier procedimiento judicial para evitar dilaciones injustificadas, para esclarecer cualquier asunto o impedir una injusticia". *Código de ética judicial*, 4 LPRA Ap. X, C. 11.

Así, cualquier limitación al descubrimiento de prueba deberá hacerse de forma razonable. Es por ello que, "[m]ás que una facultad, existe un deber que se le impone al Tribunal de Primera Instancia de actuar afirmativa y dinámicamente en la tramitación de los casos ante su

consideración". Cuevas Segarra, *supra*, en las págs. 837-838;

*Vives Vázquez v. ELA*, 142 DPR 117, 139 (1996).

Al mismo tiempo, es meritorio recordar que en nuestro ordenamiento jurídico es norma reiterada que las determinaciones discrecionales de los jueces primarios merecen deferencia. Este principio se enmarca dentro del ideal de que, en ciertos contextos, la discreción judicial es el medio idóneo para lograr una adjudicación más acertada. Véase M. Añón, *Notas sobre discrecionalidad y legitimación*, DOXA 15-16, 897, 901 (1994). No obstante, la validación de esta delegación de poder adjudicativo se cimenta en el supuesto de que el juez actuará dentro de los confines de la razonabilidad.[7] Véase *Rivera y otros v. Banco Popular*, 152 DPR, en la pág. 155; *Pueblo v. Dávila Delgado*, 143 DPR, en la pág. 173; *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). De ahí que éste sea el criterio rector e indicativo para otorgar deferencia a una determinación discrecional.

Con esto en mente, es necesario puntualizar la principal razón por la que los tribunales revisores debemos respetar las determinaciones discrecionales del foro primario. Son los jueces de instancia –quienes en el descargo

---

[7] A pesar de que la razonabilidad es un concepto relativo, una de las vertientes doctrinales de la discreción judicial apunta a que ésta también se enmarcada dentro de ciertas normas y preceptos jurídicos, sociales y culturales. Es por ello que, Dworkin señala que la discreción es "como el agujero en una rosquilla, no existe, a no ser como el área que deja abierta un círculo de restricciones que la rodea". R. Dworkin, *Los derechos en serio*, 1ra ed., Barcelona, Ed. Ariel S.A., 1984, en la pág. 84.

de sus funciones- están en continuo contacto con los litigantes, evalúan la prueba que estos presentan y atestiguan el desarrollo del pleito en el tiempo. En fin, son el timonel judicial de los litigios que ante ellos se ventilan. Al considerar esto, es lógico concluir que los jueces de instancia poseen la aptitud para dirimir con mayor certeza las controversias surgidas sobre el manejo de los casos.

Por otra parte, reconocemos la difícil labor que resulta el determinar si un tribunal abusó de su discreción. Es por ello que, en *Rivera y otros v. Banco Popular* concluimos que los tribunales apelativos no deben interferir en las determinaciones discrecionales de los jueces inferiores respecto al descubrimiento de prueba, salvo que se demuestre que el foro primario "(1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo". *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Lluch v. España Service Sta.,* 117 DPR, en la pág. 745; *Pueblo v. Dávila Delgado*, 143 DPR 157, 173 (1997).[8] Sin duda, los supuestos antes mencionados socavan la razonabilidad que legitima la discreción judicial.

---

[8] La referida jurisprudencia ilustra que en diversos ámbitos del Derecho -entiéndase, en el civil, penal y administrativo- los foros revisores deberán conceder deferencia a las determinaciones discrecionales de los jueces inferiores, a menos que se configure alguna de las ya mencionadas excepciones.

**B**

En lo pertinente a la prueba pericial, ésta es admisible en dos instancias, a saber: "(1) cuando se trata de peritos consultados por la parte contraria y que se espera sean presentados en el juicio; y (2) cuando se trata de peritos consultados con anterioridad o en preparación para el juicio, pero que no habrán de ser llamados a testificar". Cuevas Segarra, *supra*, pág. 884.

Además, tanto las Reglas de Procedimiento Civil de Puerto Rico como las federales, distinguen entre un perito de consulta y un perito testigo. Véase Walter O. Alomar Jiménez & Alana Vizcarrondo, *Derecho Procesal Civil*, 80 Rev. Jur. UPR 755, 774 (2011). Esta distinción estriba en un asunto de admisibilidad, ya que el perito de consulta goza de ciertas protecciones en virtud de la doctrina del producto de trabajo del abogado. Véase *Font de Bardón v. Mini Warehouse*, 179 DPR 322,342 (2010).

De ahí que, cualquiera de las partes puede solicitar a la otra que pretenda utilizar un perito como testigo que informe el nombre y el asunto sobre el cual éste testificará. Asimismo, esta información es requerida desde el *Informe para el manejo del caso*, pues de esta forma se asegura que "la parte contraria pued[a] prepararse adecuadamente para contrainterrogar efectivamente al perito y refutar su testimonio". Cuevas Segarra, *supra*, en la pág. 868.

En lo que atañe a una solicitud de sustitución de perito, ésta es una determinación sujeta a la discreción del

juez de primera instancia. Sobre este particular, el juez tiene que evaluar la existencia de una justa causa para tal sustitución y la temporalidad de la solicitud. De éste análisis relucirá si la petición de sustitución es presentada como una técnica dilatoria o para obtener una ventaja inapropiada en el litigio y si incide en la preparación de la otra parte para efectuar un contrainterrogatorio adecuado.[9]

Por tal razón, es indispensable considerar la finalidad de la etapa procesal en la cual se encuentra el litigio. Sin duda, el caso de autos se hallaba en la etapa de la *Conferencia con antelación al juicio*. Según la Regla 37.5 de Procedimiento Civil, 32 LPRA, Ap. V, R. 37.5, esta es la etapa en la que se orquesta el desfile de la prueba y se delimitan las controversias a ventilarse el día del juicio. Sin embargo, el informe que de allí surja "no constituye una camisa de fuerza que elimine la discreción de los jueces para alterarlo en aras de evitar una patente injusticia". *Berríos Falcón v. Torres Merced*, 175 DPR 962, 984 (2009). De esta forma, reluce nuevamente la discrecionalidad conferida a los jueces de instancia para dirigir los procedimientos de

---

[9] A modo de ejemplo, en *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1 (1st Cir. 1985) se consideró que el factor crucial al momento de evaluar el perjuicio que pueda provocar la divulgación de un perito, es con cuánta cercanía a la celebración del juicio se realizó. El fin primordial del criterio de temporalidad es que la parte contraria pueda prepararse adecuadamente para contrainterrogar y refutar al perito.

manera que se conduzca a la consecución de la justicia en un tiempo razonable.

**III**

Según fue reseñado, el descubrimiento de prueba inició con la presentación del *Informe para el manejo del caso* el 17 de diciembre de 2013. Por tanto, desde ese momento hasta la fecha en que el Tribunal de Primera Instancia determinó que el descubrimiento de prueba había finalizado, transcurrió más de un (1) año y diez (10) meses. Durante este periodo, PV Properties logró tomar siete (7) deposiciones y las partes se cursaron varios interrogatorios.

Sin embargo, la juez de instancia se vio obligada a dejar sin efecto varias vistas, incluyendo la *Conferencia con antelación al juicio* ya que ambas partes incumplieron con la presentación del *Informe preliminar entre abogados* en dos (2) ocasiones. A raíz de esto, también se dejó sin efecto la primera fecha señalada para finalizar el descubrimiento de prueba. De esta manera, la última fecha anunciada para concluir el descubrimiento fue el 30 de abril de 2015. A pesar de este pronunciamiento, el 11 de marzo de 2015 PV Properties anunció por primera vez que utilizaría un perito. El 26 de mayo de 2015, el foro primario autorizó a PV Properties la utilización de este perito como testigo e indicó que el informe pericial debía ser presentado en la vista de 6 de octubre de 2015.

No obstante, PV Properties compareció a la referida vista sin el informe pericial y solicitó la sustitución del perito testigo. Durante la vista indicó que había identificado un nuevo contador público autorizado quien, presuntamente, había evaluado la prueba pero aún no había sido contratado.

Ahora bien, establecido que la concesión o la denegatoria de una solicitud de sustitución de un perito es una discrecional del juez de instancia, corresponde evaluar si el foro primario incurrió en alguna de las actuaciones que permite a los tribunales apelativos modificar tales determinaciones.[10] Acorde con esto, es necesario analizar si la denegatoria a la solicitud del perito fue una razonable.

Como bien anticipamos, una determinación sobre el proceder de una sustitución de perito está supeditada a un análisis que pretende auscultar la justa causa para la sustitución y la temporalidad en que se presenta la solicitud. En lo aquí pertinente, PV Properties no ofreció explicación alguna respecto a su incumplimiento con la orden de presentar el informe pericial y tampoco expuso las razones por las que el perito testigo anunciado no comparecería. Además, la solicitud de sustitución del perito en este caso se presentó ya iniciada la *Conferencia con antelación al juicio*, etapa considerada como la antesala del juicio.

---

[10] Es importante señalar que el Tribunal de Apelaciones erró al no emplear el análisis correspondiente ante la solicitud de revisión de una determinación discrecional del foro de instancia.

Conforme a lo anterior, considero que el foro primario no abusó de su discreción, pues era razonable concluir que permitir la sustitución del perito –una vez iniciada la *Conferencia con antelación al juicio* y tras un largo historial de incidencias dilatorias- afectaría adversamente a los peticionarios en su preparación para refutar efectivamente al nuevo perito. Además, conviene reiterar que los jueces de instancia están llamados a intervenir y limitar el descubrimiento de prueba cuando éste atenta contra la pronta solución de las controversias y la economía procesal.

**IV**

Por los fundamentos que anteceden, reitero mi conformidad con la Sentencia emitida por este Tribunal. Por otra parte, lamento que este Tribunal no pudiera colegiar un pronunciamiento que refrendara los deberes de los jueces de instancia de evitar dilaciones injustificadas y procurar que los procedimientos se diluciden con la celeridad exigida por nuestro ordenamiento jurídico procesal.


                                        Anabelle Rodríguez Rodríguez
                                              Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| PV Properties, Inc.<br><br>    Recurrido<br><br>        v.<br><br>Central Produce El<br>Jibarito, Inc.; Orlando<br>Mayendía Díaz Nell Blanco<br>Casasnovas; Agro Produce<br>Puerto Rico, Inc., Puerto<br>Rico Supplies Group, Inc.<br><br>    Peticionarios | CC-2016-1156 | *Certiorari* |

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco a la cual se une el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 24 de enero de 2018.

Ciertamente, de ordinario, las determinaciones discrecionales del Tribunal de Primera Instancia relacionadas al manejo del caso merecen nuestra deferencia. Sin embargo, la determinación recurrida en el recurso de epígrafe es insostenible. Por entender que el Tribunal de Primera Instancia abusó de su discreción al ignorar el mandato de la Regla 37.7 de Procedimiento Civil de 2009, ante, e imponer una sanción distinta a la allí estatuida, disiento.

A continuación, reseño el tracto procesal del caso de autos por ser indispensable para situar la controversia de epígrafe en su justa perspectiva.

I

El 29 de febrero de 2012, PV Properties, Inc. (PV Properties o recurrido) y la Central Produce El Jibarito, Inc. (El Jibarito) suscribieron un Contrato de Arrendamiento de un Sistema de Producción Solar. Varios meses después, El Jibarito transfirió sus activos a Agro Produce Puerto Rico, Inc. (Agro Produce). Alegadamente, la transferencia provocó la insolvencia de El Jibarito, el impago de diecinueve mil seiscientos ochenta y nueve dólares con cuatro centavos ($19,689.04) por concepto de cánones de arrendamiento y la ulterior desconexión de los paneles fotovoltaicos arrendados.

El 24 de septiembre de 2013, PV Properties demandó a El Jibarito, Agro Produce y a Puerto Rico Supplies Group, Inc. (Puerto Rico Supplies)(en conjunto, la parte peticionaria) por incumplimiento de Contrato y cobro de dinero, inter alia. El 17 de diciembre de 2013, las partes presentaron el Informe para el manejo del caso. Así las cosas, el foro primario indicó que el descubrimiento de prueba culminaría el **30 de abril de 2014.**

Tras varios trámites procesales, el **22 de febrero de 2014** los abogados de **ambas partes** comparecieron para la Conferencia con antelación al juicio. Sin embargo, informaron que no habían preparado el Informe preliminar entre abogados. Por esta razón, el Tribunal **dejó sin efecto** el señalamiento de la Conferencia con antelación al juicio y la recalendarizó para el **18 de diciembre de 2014.** No

obstante, la Conferencia fue reseñalada por segunda ocasión; esta vez para el **17 de marzo de 2015.**

El **5 de marzo de 2015,** la parte peticionaria cumplió con una Orden de Producción de Prueba Documental. El **11 de marzo de 2015** –seis (6) días antes de la fecha pautada para la Conferencia con antelación al juicio- **ambas partes** comparecieron mediante una Urgente moción informativa conjunta y solicitando conversión de señalamiento. Allí, PV Properties informó al Tribunal que referiría la prueba documental que el demandado le entregó a un perito para la evaluación correspondiente. Indicó que necesitaban más tiempo para que el perito estudiara la prueba y pudiera ser depuesto por la parte peticionaria. Así las cosas, **ambas partes** solicitaron la conversión de la Conferencia con antelación al juicio a una Vista sobre el estado de los procedimientos.

El **17 de marzo de 2015,** las partes comparecieron al Tribunal para la Conferencia con antelación al juicio pautada. En corte abierta, el Tribunal denegó la solicitud que **ambas partes** presentaron a los efectos de convertir la Conferencia a una Vista de Status. Allí, las partes informaron haber incumplido nuevamente con la preparación del Informe preliminar entre abogados. PV Properties arguyó sobre el descubrimiento de prueba cursado entre las partes. La representante legal de Agro Produce y Puerto Rico Supplies indicó que aún no había depuesto al representante de PV Properties. El foro primario sostuvo que el hecho de

que el descubrimiento de prueba no hubiera culminado no era óbice para presentar el Informe preliminar entre abogados. Así las cosas, les concedió diez (10) días a las partes para presentar el referido informe so pena de sanciones económicas. Culminada la vista, el Tribunal indicó que: (1) el **30 de abril de 2015** culminaría el descubrimiento de prueba y (2) el **26 de mayo de 2015** se celebraría la "continuación" de la Conferencia con antelación al juicio.[11]

El **26 de marzo de 2015**, las partes presentaron el Informe preliminar entre abogados, según ordenado. En el informe, PV Properties indicó que estaba en proceso de contratar a un perito que sería notificado con suficiente antelación. El **20 de mayo de 2015**, se enmendó el Informe preliminar entre abogados para anunciar al Sr. Rafael Martínez Margarida, CPA, como perito.

El **26 de mayo de 2015**, se celebró la primera parte de la Conferencia con antelación al juicio. Allí, el Tribunal autorizó a PV Properties a utilizar al señor Martínez Margarida como perito y aceptó el Informe presentado como uno preliminar. Así las cosas, el Tribunal señaló una Vista Transaccional para el **6 de octubre de 2015**. Ese mismo día, PV Properties debía producir el Informe pericial del señor Martínez Margarida.

---

[11] A esta fecha, no cabía hablar de continuación de Conferencia con antelación al juicio. Ciertamente, hubo varios señalamientos para celebrar la Conferencia con antelación al juicio. Sin embargo, todos fueron dejados sin efecto debido a que las partes no presentaron oportunamente el Informe preliminar entre abogados. Por lo tanto, al 17 de marzo de 2015, la Conferencia con antelación al juicio aun no había iniciado.

El **6 de octubre de 2015,** la <u>Vista Transaccional</u> pautada se atendió como una <u>Vista sobre estado de los procedimientos</u>. Allí, PV Properties informó que no tenía el Informe Pericial del señor Martínez Margarida. Añadió que deseaba sustituir al señor Martínez Margarida por un nuevo perito que, a pesar de haber examinado la prueba, aún no había sido contratado. El Tribunal denegó la solicitud de sustitución del perito. Además, a petición de los demandados, dio por culminado el descubrimiento de prueba. Así las cosas, el Tribunal le ordenó a los abogados a reunirse el **11 de enero de 2016** para confeccionar el <u>Informe final de la conferencia con antelación al juicio</u>, el cual debía ser entregado el **15 de enero de 2016** y señaló la continuación de la <u>Conferencia con antelación al juicio</u> para el **21 de enero de 2016.**

El 8 de octubre de 2015, PV Properties presentó una Solicitud de Reconsideración. El 28 de octubre de 2015, el foro primario notificó una Resolución en la que denegó la solicitud de PV Properties. El 23 de noviembre del 2015, PV Properties presentó el recurso de <u>certiorari</u> correspondiente ante el Tribunal de Apelaciones. El foro *a quo* emitió una Sentencia en la que revocó la determinación del foro primario y ordenó que se permitiera la sustitución del perito solicitada. El 7 de diciembre de 2016, los peticionarios acudieron ante nos vía <u>certiorari</u> y solicitaron que revocáramos la Sentencia recurrida.

II

Una Mayoría de este Tribunal descansa en la discreción judicial que le hemos reconocido al foro primario en cuanto a sus determinaciones para validar la denegatoria de la solicitud de sustitución de perito que presentó el recurrido. Erradamente, concluyen que no se configuró ninguna de las causales por las que un foro apelativo puede modificar una determinación discrecional de un juez de instancia, a saber: (1) prejuicio o parcialidad; (2) craso abuso de discreción y (3) error en la interpretación de una norma procesal o algún derecho sustantivo. *Lluch v. España Service Sta.,* ante.

Este Tribunal ha definido "discreción" como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción." *García v. Padró*, 165 DPR 324, 334 (2005) (citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990)). Sin embargo, al ejercer la discreción los tribunales no pueden abstraerse del resto del Derecho porque ello claramente constituiría un abuso de discreción. Íd., pág. 335. Eso fue precisamente lo que ocurrió en el caso de autos.

A.

Considero que el foro primario abusó de su discreción al imponer una sanción distinta a la estatuida en la Regla 37.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.7 (2009), como primera sanción ante el incumplimiento del recurrido con respecto a la presentación del Informe Pericial.

Nuestro ordenamiento procesal reprueba el que una parte prolongue innecesariamente un pleito, pues se atentaría contra el funcionamiento de nuestro sistema de justicia. Por ello, diversas reglas de procedimiento civil autorizan la imposición de sanciones a las partes y/o sus abogados ante un sinnúmero de circunstancias particulares.[12]

La aprobación de las Reglas de Procedimiento Civil de 2009, _supra_, trajo consigo la reestructuración general de la Regla 37, la cual regula todo lo relacionado al manejo del caso. Esta etapa de los procedimientos judiciales está compuesta por la preparación del Informe de manejo del caso, la Conferencia Inicial, la Orden de Calendarización, la elaboración del Informe Preliminar entre Abogados en preparación para la Conferencia con Antelación al Juicio, la Conferencia con Antelación al Juicio y la Vista Transaccional; todos procedimientos anteriores al juicio. Véanse: Reglas 37.1-37.6 de Procedimiento Civil de 2009, _supra_. La Regla fue reestructurada para procurar que el foro primario tomara un rol más activo en los procesos judiciales y acelerar, a su vez, la resolución de los casos.[13]

Como parte de la reestructuración, se modificó la anterior Regla 37.3 de Procedimiento Civil de 1979, 32 LPRA Ap. IV, R. 37.3, la cual establecía las sanciones que el

---

[12] Véanse, por ejemplo: las Reglas 23.1, 23.2, 34.2-34.6, 35.1, 36.7, 37.1, 37.3, 37.4, 37.7, 39.2, 39.4, 40.10, 44.1-44.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V.

[13] Véase: Informe de Reglas de Procedimiento Civil de marzo 2008, Secretariado de la Conferencia Judicial y Notarial, pág. 414.

Tribunal podía imponer ante el incumplimiento con los señalamientos y órdenes relacionadas al manejo del caso. Esta disponía en parte que

> [s]i una parte dejare de comparecer, se negare a participar o compareciera sin estar debidamente preparada, a una conferencia preliminar al juicio o a la conferencia entre abogados, o incumpliere cualquier orden del tribunal, este podrá desestimar la demanda, eliminar las alegaciones del demandado, condenar al pago de costas y honorarios de abogado o dictar cualquiera otra orden que fuere justa.

Actualmente, la Regla 37.7 de Procedimiento Civil de 2009, <u>supra</u>, disposición equivalente a la precitada Regla 37.3, dispone que

> **[s]i una parte o su abogado** incumple con los términos y señalamientos de esta regla, **o incumple cualquier orden del tribunal para el manejo del caso** sin que medie justa causa, **el tribunal impondrá a la parte o su abogado la sanción económica que corresponda.** 32 LPRA Ap. V, R. 37.7 (2009) (Énfasis suplido).

Esta regla fue modificada para aclarar que, cuando una parte o su abogado incumplan con los términos dispuestos en la Regla 37, sin justa causa, **el Tribunal deberá imponer la sanción económica que estime correspondiente**. Cabe destacar que del texto de la anterior Regla 37.3 se suprimió como sanción la eliminación de alegaciones y la imposición del pago de costas y honorarios de abogado. Ello, para otorgarle "un carácter <u>más severo y mandatorio</u> a la sanción económica".[14] Asimismo, se eliminó la desestimación de la

---

[14] Íd., pág. 44. (Énfasis suplido).

Demanda como sanción por ser conflictiva con la Regla 39.2(a) de Procedimiento Civil de 2009, supra.[15]

La Regla 37.7 de Procedimiento Civil de 2009, supra, -disposición vigente que dispone para sanciones por el incumplimiento con órdenes y señalamientos relacionados al manejo del caso- establece una sola sanción: **la sanción económica.** La eliminación de las alegaciones y la desestimación –ambas más drásticas que la sanción económica- fueron eliminadas del texto de esta regla. La razón es simple. Imponer estas sanciones, como primer recurso, contraviene la política pública de que los casos se deben ventilar en los méritos. Véase: J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo III, 2da. Ed. JTS (2011), pág. 1118. Ello no significa que el Tribunal de Primera Instancia solo puede imponer sanciones económicas bajo estas

---

[15] Íd. La Regla 39.2(a) de Procedimiento Civil de 2009, supra, lee de la siguiente manera

> (a) Si el demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud del demandado podrá decretar la desestimación del pleito o de cualquier reclamación contra él, o la eliminación de las alegaciones, según corresponda. Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o la abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que ésta no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación, que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término. 32 LPRA Ap. V., R. 39.2(a).

circunstancias. Nada impide que el Tribunal imponga sanciones más drásticas a una parte que ha sido sancionada económicamente, se le ha concedido tiempo para cumplir a la vez que ha sido apercibida de las consecuencias de su incumplimiento y, aun así, incumple con los términos, señalamientos u órdenes del tribunal relacionadas al manejo del caso. No obstante, bajo el ordenamiento procesal vigente, el primer mecanismo disuasivo que debe utilizar el foro primario ante el incumplimiento de una parte con un término, señalamiento u orden relacionada al manejo del caso debe ser la sanción económica.

B.

En determinados casos, como en este, privar a una parte de presentar prueba pericial es una sanción tan drástica como la eliminación de las alegaciones. Máxime, cuando la prueba pericial es fundamental para ayudar al juzgador a entender la prueba y/o indispensable para determinar un hecho en controversia.

Con respecto a la parte demandante, no contar con la prueba pericial necesaria para probar sus alegaciones puede inducir a que posteriormente el Tribunal desestime el pleito bajo la Regla 39.2(c) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 39.2(c).[16] En ese sentido, cuando un tribunal

---

[16] La Regla 39.2(c) dispone que:
    (c) Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los

prohíbe que el demandante presente prueba pericial indispensable para probar las alegaciones, dicha sanción acarrea el mismo efecto que la eliminación de las alegaciones. Después de todo, en la etapa del juicio, una mera alegación del demandante es insuficiente para concederle el remedio que solicita si no cuenta con la prueba para demostrar la veracidad y el mérito de los hechos y circunstancias que lo justifican.

### III

Como hemos podido apreciar, el foro primario ordenó al recurrido que presentara el Informe Pericial del señor Martínez Margarida en la <u>Vista transaccional</u>. Así las cosas, el recurrido incumplió con lo ordenado y solicitó autorización para sustituir al perito anunciado. En lugar de concederle un término adicional al recurrido para: (1) someter el Informe Pericial del señor Martínez Margarida, so pena de sanciones económicas –como hizo ante el incumplimiento de ambas partes con respecto a la presentación del <u>Informe preliminar</u>; (2) someter el Informe Pericial del señor Martínez Margarida bajo apercibimiento de sanciones más drásticas luego de haberlo sancionado económicamente ó (3) anunciar al nuevo perito y someter el Informe Pericial

---

hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.

correspondiente, el Tribunal denegó la solicitud de sustitución del perito y decretó el cierre del descubrimiento de prueba. Si bien el foro primario gozaba de discreción para escoger entre los distintos cursos de acción, **el Tribunal de Primera Instancia ignoró la normativa procesal imperante respecto a la sanción principal que acarrea el incumplimiento de órdenes relacionadas al manejo del caso, según establecida en la Regla 37.7 de Procedimiento Civil de 2009, <u>supra</u>.** Al así hacerlo, abusó de su discreción.

IV

Por entender que el Tribunal de Primera Instancia abusó de su discreción al ignorar el mandato claro de la Regla 37.7 de Procedimiento Civil de 2009, supra, e imponer una sanción distinta a la sanción económica, dadas las circunstancias particulares del caso, disiento.

Mildred G. Pabón Charneco
Jueza Asociada